## SUPREME COURT.

### CHURCH agt. RHODES AND OTHERS.

The provisions for reviewing a report of referees, by a rehearing, under § 272 of the Code of 1849, is *repealed* by the Code (or act) of 1851.

And this repeal applies to pending and inchoate proceedings; that is, to actions commenced before the passage of the act of 1851, and in progress for a rehearing at the time of its passage. There is no saving clause in the act, and it sweeps away every thing except a vested right, such as a judgment.

Where judgment has been entered, and the right to appeal has been lost (by proceedings instituted for a rehearing), the court has no power to grant any relief under the provisions of § 468 of the Code. But the party seeking relief in such a case should be allowed a motion to set aside the judgment, with a view to its being entered anew, in order to have an opportunity to bring an appeal.

*Oneida Special Term, December* 1851. *Motion to set aside the report of a referee.* This cause was tried in the month of December 1850, before the referee, and the report was made on the 26th of March 1851, on which a judgment was entered on the 12th of April, and notice thereof served on the attorney for the defendant, Rhodes, on the 26th of the same month. Time was given, and proceedings were stayed from time to time, for the making of a case, and until the report should be settled and the case finally disposed of. On the 26th of April a case was prepared with a view to a rehearing of the cause, and a copy thereof served, and such proceedings were thereafter had that the case was finally settled by the referee in the latter part of October last.

A preliminary objection has been made and argued to the hearing of this motion, on the ground that the mode of reviewing a report of referees by way of rehearing. has been abolished by the Code of eighteen hundred and fifty-one.

GEO. F. COMSTOCK and W. V. SCHAACK, *for the Motion*

J. RUGER, *Opposed.*

GRIDLEY, Justice.—I have no doubt that proceedings were commenced in good faith, preparatory to a review of the report by a rehearing soon after the entering of the judgment. These

22

proceedings, however, were imperfect and inchoate, until long after the statute under which the right to review a report by re-hearing was conferred, had ceased to be the law of the land. And the question presented for decision is, whether the defendant, having commenced proceedings to obtain a review of the report, and having lost the right to appeal before the law was changed, may now perfect the proceedings and have the cause reheard under the former act.

1. The counsel for the defendant conceded that the mode of reviewing a report of referees, by a rehearing under the last clause of section 272 of the Code of 1849, was *abrogated* by the Code of 1851. Indeed, when the only provision in the act of 1849, under which a rehearing was authorized, is omitted in a revision of the act in 1851, and section 346 of the Code is so changed as to allow an appeal to be brought for errors of fact, as well as of law, it would seem that no doubt could exist as to the intention of the legislature. But the 465th section expressly repeals all statutory provisions inconsistent with this act; and by necessary construction, utterly erases from the statute book all provisions of the antecedent Code that are not found in the present enact-ment. Again, this construction is confirmed by the 459th sec-tion. This section is found among the provisions relating to existing suits, and applies the provisions of the act (*Code* of 1851) to the proceedings in the several stages of a suit; and in the third subdivision it applies the provisions of the Code (of 1851) " after a judgment or order, *to the proceedings to enforce, vacate, modify or reverse it;* including the costs of the appeal." It would be singular indeed, if the provisions of the Code of 1851, should be applied to this mode of reviewing a judgment in an action com-menced before the Code, and not to a case commenced under the Code of 1849. In my judgment, therefore, the act of 1851, re-peals the provision in the Code of 1849, authorizing a review by a rehearing, as perfectly as if it had repealed it in express terms.

2. We come now to a consideration of the effect of the repeal of this provision upon inchoate proceedings commenced when it was in force, and where no rights are saved in the repealing statute. Where a statute gives a penalty, and is repealed, with-out a saving of the cases in which suits have been commenced

Church agt. Rhodes and others.

under the law, the action fails in every stage of it before judgment. By a judgment the *right* becomes *vested*, but even after conviction the judgment will be arrested (Yates vs. U. States, 5 *Cranch*, 281; 'Schooner Rachel vs. The Same, 6 *id.* 329; 4 *Dallas*, 372; Pope v. Lewis, 4 *Ala.* 487; 1 *Binny*, 601, 608; Miller's case, 1 *Bl. R.* 451, and 3 *Burrows*, 1456). The same rule applies to civil cases as appears by a statement of the case cited from *Burrows*. Miller was an imprisoned insolvent, and had assigned his property under what was called the compulsory clause of the act, and was entitled to his discharge on the 26th of September 1761. By a subsequent act (already passed), the provision for his discharge was repealed, to take effect on the 19th of the ensuing November. The insolvent demanded his discharge, but the sessions delayed it till after the repeal attached, and his discharge was then refused. On a motion for a mandamus, to compel the justices to grant the discharge, Lord Mansfield refused it, saying, that "*no jurisdiction remained in the sessions.*" The decision in the case of Surtee vs. Ellison (4 *Man. & Ryl.* 586, 588, and 9 *Barn. & Cres.* 750); and in Maggs vs. Hunt (4 *Bingh.* 212); and in The People vs. Livingston (6 *Wen.* 526, 530), proceeded upon the same grounds. And though the judges lamented that important acts should be passed without any saving clause as to proceedings already commenced, they yet felt bound to say that a repealing statute acted directly on all pending proceedings, and deprived the courts of all power to give any relief. The same doctrine has been applied to the case of costs. Where an appeal from a justice's judgment was taken under the law existing before the Revised Statutes, under a particular act, by which the Court of Common Pleas gave the appellee costs, but before the trial of the cause the Revised Statutes had taken effect, which gave the appellant costs, if he reduced the amount of the recovery ten dollars, and the Supreme Court granted a mandamus to correct the error (4 *Wend. R.* 210). Again, the act of 1840, materially altered the fee bill of attorneys of the Supreme Court; but it saved the rights of suitors who commenced proceedings before the day when the act took effect. A subsequent act, among other things, repealed this saving clause; and after that the Supreme Court held, that all bills of costs, whether commenced before or

after 1840, should be taxed under the new act. The rule has been settled in a great variety of cases, that all pending proceedings, and all inchoate acts are swept away by a repealing statute, without a saving clause.   Mr. Dwarris says (*Dwarris on Stat.* 676), " where an act of parliament is repealed, it must be considered (except as to those transactions, *passed* and *closed*) as if it never existed." I agree with the defendant's counsel, that a construction is reluctantly given to an act, which will have a retroactive bearing, and it requires a clear and unequivocal expression of the legislative will, to deprive the courts of this power over pending and inchoate proceedings; but when that will is plainly expressed, the courts have no jurisdiction over open and unfinished proceedings. Whenever the proceeding is *closed*, and the *right vested* by a judgment, or other *decisive act*, the repeal does not affect such *vested right;* but short of this, the courts are as powerless to give a party relief as if the act under which the proceedings were commenced, had never existed (see Butler vs. Palmer, 1 *Hill*, 333 to 336, where this whole subject is discussed with great learning and research).

It remains only to consider the effect of a provision found in the 468th section of the Code.  It reads as follows: " If a case shall arise, in which an *action* for the enforcement or protection of a right, or the redress or prevention of a wrong, can not be had under this act, the practice heretofore in use may be adopted, so far as may be necessary to prevent a failure of justice." This section is found among the " general provisions," and was inserted in the former Code, in the same language, as it is in the present one.  It was not intended to provide for a case in which a difficulty might arise out of the repeal of a provision in a former Code, for it was an enactment contained in the former Code itself; but it was a wise provision made by the legislature, lest in the radical change introduced by a new and untried system, that system might be found not to be adapted to all exigencies, and might leave some cases without the appropriate remedies. The legislature foresaw that there might be instances, like that of Crane agt. Sawyer (5 *Howard's Pr. Rep.* 372), in which the forms of the proceedings sanctioned by the Code, could not be applied to the case; and therefore, in such instances, they

Church agt. Rhodes and others.

authorized a procedure under the former system, so far as to prevent a failure of justice. Again, "*the practice heretofore in use,*" means the practice which prevailed before the Code of procedure; *but* there never was a practice, before the Code, of reviewing a report of referees, *after a judgment.* Nor was there ever a practice before the Code of submitting a chancery cause (which this is) to a referee, and then reviewing the decision at a special term. It is, therefore, quite clear, from these and other considerations, that the clause in question can not aid the defendant.

What then is his remedy? The defendant might have reviewed this report on the judgment *by appeal.* That remedy still remains, but the period has elapsed for bringing an appeal; so that a motion must be made to set aside the judgment, with a view to its being entered anew in order that the defendant may have an opportunity to review the judgment by appeal. There is a peculiar reason for granting this motion, arising out of the effect of the repeal of the provisions in the act of 1849, under which the proceedings in this case were instituted; and relying upon which the defendant forbore to give notice of an appeal until it was too late. In truth, the defendant should have had an order staying the entry of judgment until the case was settled and filed. The 2d subdivision of section 281, by expressly including the case or bill of exceptions among the papers, which are put together to constitute the judgment record, and that the review of the judgment takes place on the case, unequivocally shows that the entering of judgment should be stayed till the case is settled. Had this course been taken no rights would have been lost. The defendant should be *relieved,* however, as this is a case on the merits eminently worthy of being reviewed.

This motion is therefore denied on the preliminary objection, and if the defendant elects, he may have the judgment set aside *pro forma,* and immediately reentered, by the paying any disbursements that may attend the reentry of the judgment, and ten dollars for opposing the motion.