THE MARION TOWNSHIP GRAVEL ROAD CO. *v.* SLEETH, TREASURER.

TURNPIKE.—*Assessments on Land.*—*Repeal of Statutes.*—By the act of March 13th, 1875, Acts 1875, Reg. Sess., 80, repealing the statutes authorizing the making and collecting of assessments on lands for the construction of plank, macadamized or gravel roads, the remedy for the collection of such an assessment and also the lien or right itself were taken away, and the collection of an assessment already placed upon the tax duplicate at

the time of the passage of said repealing act could not be enforced; and the fact that the road had been completed on the faith of such assessment could not affect the operation of the statute. .

SAME.—*Constitutional Law.*—The general statutes authorizing assessments on lands for the construction of plank, macadamized and gravel roads were not contracts between the State and the companies constructing such roads, and the repeal thereof and the divesting, by the repealing statute, of an acquired lien on land did not violate the provision of the Constitution of the United States prohibiting the states from enacting laws which impair the obligation of contracts.

From the Shelby Circuit Court.

*O. J. Glessner* and *T. W. Woollen,* for appellant.

*S. Major* and *C. Wright,* for appellee.

Downey, C. J.—This was a proceeding by mandate by the appellant against the appellee.

The petition alleges that the appellant is a corporation duly organized under the act of May 12th, 1852, 1 G. & H. 474, and amendments thereto; that the company had a solvent subscription of five hundred dollars per mile; that an estimate had been made of the cost of construction of their road, being the sum of ten thousand one hundred and twenty dollars; that additional stock was thereupon subscribed, amounting to three-fifths of the estimated cost; that they made due application to the board of commissioners of Shelby county, Indiana, for an order to have assessed the amount of benefits that would result to each tract of land within one and one-half miles of such road on either side thereof, and within like distance of either end thereof, from the construction and maintenance of such proposed road; that the board of commissioners found the necessary facts to be true, and thereupon made an order that said assessment be made, as prayed for in the petition; that afterwards the assessors of benefits made the assessments according to law and reported the same to the auditor; that the notice required was given, and the board of equalization met, but there were no complaints; that the total assessment amounted to ten thousand eight hundred and thirty-six dollars and twenty-one cents; that one-third of said assessment was put upon

the duplicate by the auditor for the year 1874, and the duplicate placed in the hands of the appellee, as treasurer of Shelby county; that on the faith of this assessment, the appellant proceeded to and did complete her road during the year 1874; and that the appellee refuses to collect it. Prayer for a mandate to compel the collection of the assessment.

On filing the petition, an alternative writ of mandate was issued, requiring the appellee to show cause why the mandate should not be made peremptory. The appellee made return, and, among other grounds, he alleged and insisted that the statute authorizing the making and collection of such assessments had been repealed, and that, therefore, he had no authority by law to do the act which he was required to do. A demurrer to the return was overruled, and there was final judgment for the defendant. The ruling of the court on the demurrer to the return is assigned as error.

Conceding that the company was duly organized, and that the assessments were properly made, the question is presented as to the effect of the repeal of the statutes upon the right of the treasurer to collect the assessments.

The repealing act was approved March 13th, 1875, and is found in Acts 1875, p. 80, Regular Session, and is as follows: "That an act repealing an act entitled 'an act to amend sections three and fourteen of an act entitled " an act to allow county commissioners to organize turnpike companies, when three-fifths of the persons representing the real estate within prescribed limits petition for the same, and to levy a tax for its construction, and provide for the same to be free;" approved March 6th, 1865,' approved March 9th, 1867, and all the act entitled, 'an act authorizing the assessment of lands for plank, macadamized and gravel road purposes, prescribing the manner of assessing and collecting the same, and repealing the law on that subject approved March 11th, 1867,' approved May 14th, 1869, be and the same are hereby repealed, except section twenty of said last recited act, and all other laws authorizing an assessment or collec-

tion of any tax or assessment for the construction of any plank, macadamized or gravel road purposes in this State; *Provided, however,* that this act shall in no wise be construed to interfere with assessments heretofore collected or paid for the benefit or construction of any plank, macadamized or gravel road company; *And provided further,* that this act shall in no wise be construed to revive the acts repealed by the act repealed by this act."

The second section declares an emergency and puts the act in force from and after its passage.

If the acts in question are not repealed by this act, it must be because the legislature had not the power to repeal them. The language is clear and appropriate. We do not understand counsel for the appellant to contend that the legislature could not repeal the acts in question as to future cases, but we understand them to claim that, by the making of the assessments, a lien accrued upon the lands assessed, and that the company acquired an indefeasible right to demand the amount assessed.

The first section of the act of 1869 is as follows:

" That any plank, macadamized or gravel road company, organized, or that may hereafter be organized, under and pursuant to any act of this State now in force, authorizing the construction of macadamized and gravel roads, having a valid and solvent subscription of at least three-fifths of the estimated cost of construction of said road, such estimate being first made by a competent and disinterested civil engineer, may petition the board of commissioners of the county or counties in which such proposed road, or any part thereof, is, or may be located, to have assessed the amount of benefit to each tract of land, within one and one-half miles of such road, on either side thereof, and within like distance of either end thereof."

The second and third sections prescribe the manner of making the assessments. The fourth section is as follows:

" It shall be the duty of the county treasurer to collect such assessments at the time and in the manner he collects

other taxes, in annual instalments, as the same may be placed upon his duplicate; and for that purpose the county auditor shall put upon the tax duplicate of each year, commencing with the year in which such assessment is made, if such land has been assessed for one road only, one-third of the whole amount of such assessment. If such land has been assessed for two roads, one-sixth of the whole amount of such assessment. If for three or more roads, one-ninth of the whole amount of such assessment, which amount, when so put upon the tax duplicate, shall constitute a lien on such lands so assessed until paid, and such auditor shall continue the same from year to year, until the whole amount has been put upon such duplicate, and collected. *Provided, however,* that when such company shall have collected an amount sufficient to construct such road, and pay all legitimate expenses, it shall be their duty to notify the auditor of such fact, after which no more of said assessments shall be placed upon the duplicate, or collected by the treasurer, except such a per cent. of the assessment against such lands as the owners thereof shall not at that time have paid their ratable proportion of the entire assessment upon; and it is hereby made the duty of said board of directors, from time to time to order the collection of such amount of such unpaid ratable proportion as they may deem proper, until all persons against whose lands assessments of benefits have been made and not released under the provisions of this act shall have paid their full proportion of said assessment. All funds thus collected after the completion of the road, for which said assessments were made, shall be applied to the keeping up of repairs."

This section declares that the assessment when placed upon the tax duplicate shall constitute a lien on such land so assessed. It appears that one instalment of the assessment was put on the tax duplicate by the auditor before the repealing act of March 13th, 1875, was passed.

It is alleged that the company proceeded to and did complete its road on the faith of the assessments. We cannot

think that this fact can add any strength to the claim of the company. We find no provision of the statute authorizing the assessments which contemplated the construction of the road or the contracting of debts by the company on the faith oi the assessments before they were collected. On the contrary, it seems reasonable to suppose that the legislature expected that the company would expend the money after it was collected, and not in anticipation thereof. Had the statute authorized or clearly contemplated the construction of the road or the creation of debts therefor in anticipation of the collection of the assessments, there would have been better ground on which to claim that the law could not be repealed after such road had been constructed or such debts incurred.

When we look for some constitutional limitation or restriction preventing the legislature from repealing the act in question, we can find none, unless it be that clause in the Constitution of the United States which prohibits states from enacting laws which impair the obligation of contracts. Act 1, sec. 10. Is there in this case any contract between the state and the company? We confess our inability to see it, if there is. A contract is an agreement, upon sufficient consideration, between two or more competent parties, to do or to refrain from doing some particular act. We fail to find the essential elements of a contract between the state and the company in the legislation in question and the acts of the company thereunder. This was a general statute. The state did not agree not to repeal it, but, on the contrary, expressly reserved the right to alter, amend or repeal the law under which such companies are organized, whenever it should be deemed conducive to the public good. 1 G. & H. 480, sec. 24. The act authorizing these assessments is, in substance, only an amendment of the act of 1852, under which the company was organized. It conferred upon the company additional rights and powers not given by the original act. The right to repeal, alter or amend the act upon which the company depends for its existence must embrace the

right to repeal or amend the subsequent act, which merely conferred upon the company additional powers.

We are referred by counsel for the appellant to the following authorities:

*Stuber's Road*, 28 Penn. St. 199; *Dartmouth College* v. *Woodward*, 4 Wheaton, 518; *Smead* v. *The Indianapolis, etc., Co.*, 11 Ind. 104; *The Aurora and Laughery, etc., Co.* v. *Holthouse*, 7 Ind. 59; *The State* v. *Springfield Township*, 6 Ind. 83; *Armstrong* v. *The Board of Commissioners of Dearborn Co.*, 4 Blackf. 208; *The President, etc.*, v. *The State*, 1 Blackf. 267.

The counsel for appellee cite the following authorities:

*The State* v. *Cooper*, 5 Blackf. 258; *The Board of Com. Allen Co.* v. *Silvers*, 22 Ind. 491; *Brown* v. *Buzan*, 24 Ind. 194; *Chapin* v. *Crusen*, 31 Wis. 209; *Tomlinson* v. *Jessup*, 15 Wal. 454; *The State* v. *Town of Bergen*, 5 Vroom, 438; *Lincoln* v. *The State, ex rel. Wood*, 36 Ind. 161; *Roush* v. *Morrison*, 47 Ind. 414; *Bailey* v. *Mason*, 4 Minn. 546; *Butler* v. *Palmer*, 1 Hill, 324; *North Canal Street Road*, 10 Watts, 351; *Fenclon's Petition*, 7 Penn. St. 173; *McMaster's Petition*, 7 Penn. St. 173; *Church* v. *Rhodes*, 6 How. Pr. 281; *Bloomer* v. *Stolley*, 5 McLean, 158; *Lucas* v. *Board Com. Tippecanoe Co.*, 44 Ind. 524; *Weeks* v. *City of Milwaukee*, 10 Wis. 242; *Sloan* v. *The State*, 8 Blackf. 361; *Bailey* v. *Mayor, etc., of N. Y.*, 3 Hill, 531.

Upon a careful examination of these authorities, we are forced to the conclusion that by the repeal of the statutes authorizing the making of the assessments and the collection thereof, not only the remedy for the collection of the assessments, but also the lien or right itself is taken away. We think this was the result contemplated by the legislature, or they would have inserted in the act a clause saving the right to collect assessments in such cases. If the repealing act is operating unjustly, the remedy must be obtained from the legislature. It cannot be afforded by the courts.

The judgment is affirmed, with costs.